IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PEGGY IRENE J., § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| V. § | No. 3:19-cv-1485-K-BN | |
| § | | |
| ANDREW M. SAUL, § | | |
| Commissioner of Social § | | |
| Security Administration, § | | |
| § | | |
| Defendant. § | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
<u>**UNITED STATES MAGISTRATE JUDGE**</u>

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Ed Kinkeade. *See* Dkt. No. 4.

Plaintiff Peggy Irene J. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). *See* Dkt. No. 15.

The Commissioner has filed his response in opposition, s*ee* Dkt. No. 16, and Plaintiff has filed her reply, *see* Dkt. No. 17.

For the reasons explained below, the hearing decision should be reversed.

**Background**

Plaintiff alleges that she is disabled due to bipolar disorder, depression, post-traumatic stress disorder ("PTSD"), gastroesophageal reflux disease ("GERD"), liver disease, obesity, high cholesterol, hypertension, sacroiliitis, ulnar neuropathy, and migraine headaches. *See* Dkt. No. 13-1 at 61.

1

After Plaintiff's application for a period of disability and disability insurance benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on February 3, 2016. *See* Dkt. No. 13-1 at 56-80.

At the time of the hearing, Plaintiff was 50 years old. *See id.* at 59. She testified that she received a formal education until the 8th grade. *See id.* at 59-60.

Plaintiff testified that she has work experience as a stock puller for a veterinarian supply company. *See id.* at 60. She testified that her job function was to pull medications from within a warehouse cooler to fill supply orders. *See id.* Plaintiff has not engaged in substantial gainful activity since July 2, 2014. *See id.* at 40.

The ALJ found that Plaintiff was not disabled and therefore not entitled to SSI benefits. *See id.* at 49. Although the ALJ found that Plaintiff's severe impairments included "depression, gastroesophageal reflux disease (GERD), obesity, hypertension, and headaches," *see id.* at 40, the ALJ nonetheless concluded that these impairments did not meet or equal the criteria of a severe impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1, *see id.* at 41.

The ALJ further determined that Plaintiff had the residual functional capacity to perform light work with the following restrictions:

> She could lift and carry 20 pounds occasionally and 10 pounds frequently. She could stand and/or walk for 6 hours in an 8-hour day and sit for 6 hours in an 8-hour day. She could push and pull 20 pounds occasionally and 10 pounds frequently. She could occasionally crouch, crawl, and kneel. She could occasionally climb stairs, but never climb ladders. Due to psychologically based factors, [she] has some limitations, but is able to understand, remember, and carry out

> simple instructions, make simple decisions, and maintain concentration and persistence long enough to complete simple tasks.

*See id.* at 43.

Given Plaintiff's age, education, and exertional capacity for light work, the ALJ determined that Plaintiff is not disabled and otherwise capable of making a successful adjustment to such work. The ALJ concluded that transferability of Plaintiff's job skills was not an issue in this case because Plaintiff's past relevant work is unskilled. *See id.* at 48. The ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, she would be able to perform the requirements of representative occupations such as a cleaner or housekeeper. *See id.* at 49.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. In Plaintiff's appeal from the decision of the Commissioner she claims that the ALJ's residual functional capacity determination is not supported by the substantial evidence of record. *See* Dkt. No. 15. First, Plaintiff argues that the ALJ failed to properly consider her severe impairment of headaches when determining her residual functional capacity. *See id.* at 2. Second, Plaintiff argues that the ALJ did not consider Plaintiff's carpal tunnel syndrome and bilateral ulnar neuropathy and a left index trigger finger when determining Plaintiff's residual functional capacity. *See id.* at 2-3.

The Commissioner responds by arguing that substantial evidence supports the ALJ's finding. *See* Dkt. No. 16. The Commissioner points to the fact that, in his hearing decision, the ALJ notes that Plaintiff's most recent medical records show that

Plaintiff declined having headaches. *See id.* at 4-5. The Commissioner also points out that Plaintiff underwent surgery in 2007 that appeared to resolve the majority of her carpal tunnel-related symptoms. *See id.* at 5-6.

The undersigned concludes that the hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo. See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The

Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is

5

conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

# Analysis

Plaintiff' claims that the ALJ failed to properly account for some of her impairments when determining her residual functional capacity. The undersigned agrees.

I. The ALJ should have considered functional limitations resulting from Plaintiff's headaches.

Plaintiff argues that the record evidence establishes that she suffers from debilitating headaches. *See* Dkt. No. 15 at 5-6. Her headaches occur daily and last for hours on end. *See id.* at 5. Plaintiff claims that her headaches force her to spend extended time laying down. *See id.* She also claims that ibuprofen provides limited relief and that she takes Topamax, a prescription drug, to better control her headaches.

And Plaintiff asserts that the ALJ found that Plaintiff's headaches amount to a severe impairment that significantly limits her ability to perform basic work activities. *See id.* at 6. But the ALJ did not account for Plaintiff's headaches when determining Plaintiff's residual functional capacity. *See id.*

Plaintiff argues that the ALJ's failure to include headaches in determining Plaintiff's residual functional capacity is not supported by substantial evidence. *See id.* Plaintiff claims that this is especially true because the ALJ asked the vocational expert at Plaintiff's administrative hearing to assume that a person would miss one day of work due to medical reasons. *See id.*

The Commissioner responds by arguing that the ALJ specifically discussed the medical records that were relevant to Plaintiff's headaches. *See* Dkt. No. 16 at 4. And

the Commissioner argues that the ALJ noted that the most recent medical records show that Plaintiff declined having headaches. *See id.*

The Commissioner also argues that Plaintiff's limitations regarding her headaches are based on her own self-reporting. *See id.* at 5. The Commissioner argues that just because Plaintiff asserts that she has a severe impairment does not necessarily mean that such limitations credibly exist. *See id.*

The Commissioner further argues that the ALJ need only incorporate assessment and hypothetical questions to the vocational expert those claimed disabilities that are supported by the evidence and recognized by the ALJ. *See id.* The Commissioner argues that in this case the ALJ accounted for the limitations from Plaintiff's headaches by limiting the amount of time Plaintiff would be required to concentrate and held that Plaintiff should maintain concentration and persistence long enough to complete simple tasks. *See id.* Lastly, the Commissioner argues that under Fifth Circuit case law, even if an impairment is deemed severe at Step Two, no error exists if specific limitations are not included in the RFC. *See id.* (citing *Harrell v. Bowen,* 862 F.2d 471, 481 (5th Cir. 1988)).

In reply, Plaintiff points out that the Commissioner concedes that the ALJ found Plaintiff's headaches to be a severe impairment. *See* Dkt. No. 17 at 4. Plaintiff argues that in fact the Commissioner is contradicting the ALJ in that the ALJ defined a severe impairment as one that would "significantly limit(s) an individual's ability to perform basic work activities." *Id.* Plaintiff reiterates the inconsistency in the ALJ's

8

finding that Plaintiff's headaches were severe and the ALJ's decision to not include her headaches in his residual functional capacity determination. *See id.*

And Plaintiff claims that the Commissioner's explanation that the ALJ did consider Plaintiff's headaches by limiting Plaintiff to "simple tasks" is unpersuasive. *See id.* Plaintiff fails to see the connection between a limitation to simple tasks and headaches. *See id.* Plaintiff points out that there is no medical evidence in the record that her headaches are triggered by performing complex or detailed tasks. *See id.*

In *Walker v. Colvin*, the U.S. District Court for the Northern District of Texas addressed whether remand is warranted when an ALJ fails to address a claimant's severe impairment when determining the claimant's residual functional capacity:

> As stated in *Spears v. Barnhart*, "the purpose of assessing the claimant's RFC is to determine the work that can be done despite present limitations [; however] the ALJ ... did not include any limitations–basically contradicting the fact that he found her impairments to be severe." 284 F. Supp. 2d 477, 483 (S.D. Tex. 2002); *see also Norman v. Astrue*, No. SA–10–CA–849–XR, 2011 WL 2884894, at *6 (W.D. Tex. July 18, 2011)("Similar to *Spears*, here the ALJ did not include any limitations resulting from the [impairment], contradicting his own finding that the [impairment] was 'severe' "). Texas federal courts have held that such an inconsistency warrants remand. *See Spears*, 284 F. Supp. 2d at 483 (finding the ALJ's failure to address the claimant's limitations related to her severe impairment was remandable error); *Norman*, 2011 WL 2884894, at *6 (finding remand was warranted where the ALJ found the claimant's limitation was severe at Step 2, but failed to include any limitation resulting from the impairment in his RFC analysis); *Martinez v. Astrue*, No. 2:10–cv–0102, 2011 WL 4128837, at *5–7 (N.D. Tex. Sept. 15, 2011), *rec. adopted*, 2011 WL 4336701 (N.D. Tex. Sept. 15, 2011). In *Martinez*, for instance, the ALJ failed to include limitations from the plaintiff's hand surgery in the RFC despite finding that the hand surgery was a severe impairment. 2011 WL 4128837, at *5–6. The court remanded the case because it was unable to determine whether the ALJ intended the hand surgery to be a severe impairment, and if so, whether the RFC should have included certain limitations relating

9

> to it. *Id.* at *7. The court explained that if the RFC should have included those limitations, then the ALJ was required to seek additional testimony from the VE as to whether the plaintiff could still perform the jobs identified by the VE. *Id.*
>
> Conversely, several Texas federal courts have found that an ALJ does not err solely by finding an impairment severe at step two and failing to attribute any limitation to that impairment in his RFC assessment. *See Kozlowski v. Colvin*, No. 4:13–cv–020–A, 2014 WL 948653, at *5–6 (N.D. Tex. Mar. 11, 2014); *Gonzalez v. Colvin*, No. 4:12–cv–641–A, 2014 WL 61171, at *6 (N.D. Tex. Jan. 6, 2014); *Scott v. Colvin*, No. 4:12–cv–01569, 2013 WL 6047555, at *11 (S.D. Tex. Nov. 14, 2013); *Carnley v. Colvin*, No. 3:12–cv–3535–N, 2013 WL 5300674, at *9 (N.D.Tex. Sept. 20, 2013); *Adams v. Colvin*, No. 4:12–cv–490–A, 2013 WL 5193095, at *9 n. 6 (N.D. Tex. Sept. 13, 2013). In fact, the Middle District of Florida has found that this is the "prevailing rule," citing cases in several circuits that made such a finding. *See Davis v. Comm'r of Soc. Sec.*, No. 6:12–cv–16940–orl–36TBS, 2013 WL 6182235, at *6 (M.D. Fl. Nov. 25, 2013) (citing cases). In those cases, the courts held that a finding that an impairment is severe does not necessarily lead to a conclusion that the impairments imposed significant work-related limitations for purposes of an RFC. *See id.*

No. 3:14-CV-1498-L, 2015 WL 5836263, *15 (N.D. Tex. Sept. 30, 2015).

But this case is distinguishable from some of the Texas federal cases finding no error because in those cases, the ALJ considered limitations that encompassed those imposed by the severe impairments or that accounted for the limitations in some respect before making a disability finding. *See, e.g.*, *Gonzalez*, 2014 WL 61171, at *6 (finding the ALJ's decision was not subject to reversal where, although the ALJ did not set forth specific limitations in his RFC determination relating to only the claimant's severe impairment, he found other limitations that took into account the claimant's severe impairment); *Carnley*, 2013 WL 5300674, at *9 (finding although the ALJ erred by finding claimant's seizure disorder to be a severe impairment and failing to incorporate limitations from the disorder into the RFC, it was clear he

intended to include seizure limitations because the hypothetical questions posed to the VE at the hearing included such limitations; therefore there was no need to remand the case).

Here, Plaintiff's medical records show that she regularly suffers from headaches that last one to two hours each and that cause her to have to lay down for a period of time in order to get relief. *See* Dkt. No. 13-1 at 504. And, during the administrative hearing, Plaintiff testified that she suffers from headaches two or three times a week. *See id.* at 69. Plaintiff also testified that her headaches sometimes force her to stay in bed all day or even for several days on end. *See id.*

And the ALJ found Plaintiff's headaches to be a severe impairment that "significantly limit the claimant's ability to perform basic work activities." *Id.* at 41. But the ALJ's discussion at Step Two does not address Plaintiff's headaches. It is not clear whether the ALJ intended for Plaintiff's migraine headaches to be listed as a severe impairment.

And the ALJ's limitations in Plaintiff's residual functional capacity do not address the fact that Plaintiff regularly suffers from headaches that can sometimes incapacitate her for days on end.

The Commissioner argues that ALJ accounted for the limitations from Plaintiff's headaches by limiting the amount of time that Plaintiff would be required to concentrate and held that Plaintiff should maintain concentration and persistence long enough to complete simple tasks. But the hearing decision appears to show that this limitation is intended to address Plaintiff's mental condition regarding her

11

ability to concentrate, focus, and complete simple tasks. There is nothing in the record that shows that the restriction is intended to address the fact that Plaintiff's headaches sometimes leave her unable to get out of bed for days on end. Nor is there any evidence that Plaintiff's headaches are caused by undertaking complicated tasks as opposed to simple tasks.

The undersigned concludes that the ALJ failed to note any limitations at all with respect to Plaintiff's headaches, despite finding that her headache's amount to a severe impairment. Given the inconsistency in the ALJ's finding of severity at Step Two regarding Plaintiff's headaches and his assertion that there were signification limitations attributed to Plaintiff's headaches, with his failure to include any limitations regarding those impairments in his residual functional capacity analysis, remand is required on this issue.

II. The ALJ should have considered functional limitations relating to Plaintiff's upper extremities.

Plaintiff also claims that the ALJ incorrectly concluded that her carpal tunnel syndrome surgery resolved the problems she has with her hands and arms. *See* Dkt. No. 15 at 5. Plaintiff argues that the record evidence shows that she continues to have difficulty with her hands including bouts of pain, swelling, numbness and weakness. *See id.*

Plaintiff points to examination notes from her visit to an orthopedic specialist on May 20, 2014. *See id.* at 7. During that examination, Plaintiff was found to have symptoms of ulnar neuropathy at the bilateral upper extremities and she was found to have a left index trigger finger. *See id.* Plaintiff argues that the evidence

establishes that the surgery for carpal tunnel syndrome did not relieve the majority of her symptoms. She claims that the ALJ erred by not including any limitations in the use of her hands for reaching, handling, or fingering. *See id.*

The Commissioner responds by arguing that Plaintiff's physical examinations showed her extremities were normal. *See* Dkt. No. 16 at 5. And the Commissioner argues that the ALJ's finding is supported by the fact that the ALJ noted that Plaintiff had full range of motion of her wrists and fingers. *See id.* The ALJ also noted that Plaintiff presented with no hand tremors and that her finger movements were normal in both hands and that Plaintiff could approximate her thumb with her other fingers. *See id.* at 5-6.

The Commissioner argues that Plaintiff's sensory examination was normal to touch, pin, vibration, and position. *See id.* at 6. And Plaintiff's health care providers identified no long-term limitations related to carpal tunnel syndrome. *See id.* The Commissioner argues that Plaintiff's subjective complaints must be corroborated by objective medical evidence. *See id.*

In Plaintiff's reply she points out that the ALJ never referred to any evidence regarding Plaintiff's ability to use her hands. *See* Dkt. No. 17 at 3. Plaintiff argues that the ALJ only referred to incidental findings by examiners who were not directly assessing Plaintiff's ability to use her hands. *See id.*

Plaintiff claims that, while the ALJ relied on the findings of a consultative examiner to determine that Plaintiff's hand functions were normal, that examiner was not a specialist. *See id.* Plaintiff contends that the consultative examiner's

13

findings are contradicted by Dr. Michael Wimmer, who is a specialist in the field. *See id.* Plaintiff claims that, by failing to refer to Dr. Wimmer's findings, the ALJ erred in determining Plaintiff's limitations in the use of her hands and arms. *See id.*

Plaintiff's medical records show that Plaintiff continued to have trouble with her hands and arms even after her carpal tunnel surgery.

Plaintiff's medical records show that she was found to have a left index trigger finger and ulnar neuropathy in May 2014. *See* Dkt. No. 13-1 at 539. And Dr. Wimmer found that Plaintiff suffers from bilateral ulnar neuropathy at the elbows and diminished sensation in her fingers. *See id.* at 1045-51. While Plaintiff's carpal tunnel surgery may have resolved symptoms related to carpal tunnel syndrome, it is evident that Plaintiff continues to have swelling, numbness, and tingling of the hands and fingers. *See id.*

The undersigned concludes that the ALJ's residual functional capacity assessment is not supported by substantial evidence because it fails to account for Plaintiff's limited ability to use her upper extremities.

III. <u>Error under *Stone v. Heckler*</u>.

Plaintiff also argues that the ALJ's definition of severe impairments is inconsistent with the standard used in the Fifth Circuit. *See* Dkt. No. 15 at 4 n.2; *see Stone v. Heckler,* 752 F.2d 1099 (5th Cir. 1985).

In *Stone v. Heckler*, the United States Court of Appeals for the Fifth Circuit "construed the current regulation as setting the following standard in determining whether a claimant's impairment is severe: '[A]n impairment can be considered as

14

not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir.1984)).

In making a severity determination, the ALJ must set forth the correct standard by reference to Fifth Circuit opinions or by an express statement that the Fifth Circuit's construction of the regulation has been applied. *See Hampton v. Bowen*, 785 F.2d at 1308, 1311 (5th Cir. 1986). A court must assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to [*Stone*] or another [opinion] of the same effect, or by an express statement that the construction [the Fifth Circuit gave] to 20 C.F.R. § 404.1520(c) (1984) is used." *Stone*, 752 F.2d at 1106.

Notwithstanding this presumption, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *See Hampton*, 785 F.2d at 1311. That is, the presumption may be rebutted by a showing that the ALJ applied the correct legal standard, regardless of the ALJ's recitation of the severity standard. *See Morris v. Astrue*, No. 4:11-cv-631-Y, 2012 WL 4468185, at *9 (N.D. Tex. Sept.4, 2012); *see also Taylor v. Astrue*, No. 3:10-cv-1158-O-BD, 2011 WL 4091506, at *6 (N.D. Tex. June 27, 2011), *rec. adopted*, 2011 WL 4091503 (N.D. Tex. Sept.14, 2011), aff'd, 706 F.3d 600 (5th Cir. 2012) (applying harmless error analysis in *Stone* error cases).

Here, the ALJ recited the incorrect standard. The ALJ defined an impairment as not severe if it "would have no more than a minimal effect on an individual's ability to work." Dkt. No. 13-1 at 39. The standard recited by the ALJ here allows for a minimal effect on the claimant's ability to work full-time. But the *Stone* severity standard does not allow for any interference with work ability – even minimal interference. *See Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805-06 (N.D. Tex. 2009); *Morris*, 2012 WL 4468185, at *5. Thus, the ALJ did not actually state and apply the correct standard.

In the past, this would be grounds for automatic remand because it constituted a legal error. *See, e.g.*, *Scroggins*, 598 F.Supp.2d at 806-07. But, more recently, courts have not automatically remanded such cases. *See, e.g., Rivera v. Colvin*, No. 3:12-cv-1748-G-BN, 2013 WL 4623514, at *6 (N.D. Tex. Aug. 28, 2013); *Easom v. Colvin*, No. 3:12-cv-1289-N-BN, 2013 WL 2458540, at *4-*6 (N.D. Tex. June 7, 2013). Rather, the presumption that legal error occurred based on the incorrect wording of the standard may be rebutted by a showing that the error was harmless. *See Yanez v. Colvin*, No. 3:12-cv-1796-K-BG, 2013 WL 4766836, at *3 (N.D. Tex. Sept. 5, 2013).

Because this case should be remanded on other grounds, the Court need not determine whether the ALJ's error was harmless. But the undersigned cautions the Commissioner to apply the correct standard on remand.

## Recommendation

The hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 23, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE